## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **JOHN DOE,** | |
| **Plaintiff,** | |
| **v.** | **Case No.** |
| **UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER, DR. FRANK FILIPETTO,** *in both his official capacity and his individual/personal capacity*, **DR. EMILY MIRE,** *in both her official capacity and her individual/personal capacity*, and **DR. THOMAS MOORMAN,** *in both his official capacity and his individual/personal capacity.* | |
| **Defendants.** | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff John Doe ("Doe") files this Original Complaint against the University of North Texas Health Science Center, Dr. Frank Filipetto, and Dr. Emily Mire ("Defendants") and would respectfully show the Court the following:

### I.      PARTIES

1.      Plaintiff, John Doe is an individual residing in the State of Texas. For privacy reasons involved in this matter, Doe hereby exercises his right to proceed with this matter anonymously. Defendants' unlawful and intentional conduct has harmed Doe's reputation and his ability to complete his education and pursue his chosen profession. If Doe were not permitted to proceed anonymously, then Doe would have no effective way to obtain redress for Defendants'

unlawful conduct through the use of government power without amplifying the harm caused by Defendants and further damaging Doe's career prospects. The need to protect the identity of Doe does not hinder the defense of this matter because the facts are well known to Defendants. When balancing the need to protect Doe's privacy against any inconvenience to Defendants, the protection of Doe's privacy is paramount and prevails.

2.      Defendant University of North Texas Health Science Center ("UNTHSC") is an institution of higher education pursuant to Chapter 105 of the Texas Education Code.  UNTHSC may be served with process through its President; Michal R. Williams, DO, MD, MBA; at the University of North Texas Health Science Center, 3500 Camp Bowie Blvd. EAD-840, Fort Worth, Texas 76107.

3.      Defendant Dr. Frank Filipetto is a resident of the State of Texas and is the Interim Dean and was the Assistant Vice Dean for the Texas College of Osteopathic Medicine which is part of UNTHSC at all relevant times herein and may be served with process at the University of North Texas Health Science Center, 3500 Camp Bowie Blvd. EAD-840, Fort Worth, Texas 76107, or wherever he may be found.

4.      Defendant Dr. Emily Mire is a resident of the State of Texas and is the Executive Director, Student & Academic Success for UNTHSC's Division of Student & Academic Affairs Executive Team at all relevant time herein and may be served with process at the University of North Texas Health Science Center, 3500 Camp Bowie Blvd. EAD-840, Fort Worth, Texas 76107, or wherever she may be found.

5.      Defendant Dr. Thomas Moorman is a resident of the State of Texas and is the Vice President for Student Affairs at UNTHSC at all relevant time herein and may be served with

process at the University of North Texas Health Science Center, 3500 Camp Bowie Blvd. EAD-840, Fort Worth, Texas 76107, or wherever he may be found.

## II.      JURISDICTION AND VENUE

6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, specifically claims and causes of action that arise under 42 U.S.C. §§ 12131–12134 and 29 U.S.C. § 794, as amended by the ADA Amendments Act and amendments to the Rehabilitation act; 42 U.S.C. § 1983, and the U.S. Constitution.

7.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because one or more of the Defendants reside in this district, and this is the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## III.      FACTS

### A. Background

8.      Doe began attending medical school in the fall of 2014 in the Texas College of Osteopathic Medicine ("TCOM") and at UNTHSC.[1] Doe's first three years at TCOM were uneventful as Doe worked successfully to complete his medical degree. However, during Doe's intensive fourth-year rotations, Doe began experiencing difficulties with the TCOM administration. Defendants had repeatedly failed to submit the necessary documentation to Doe's fourth-year medical rotation sites.

9.      Defendants disputed the reasons for repeatedly failing their duty to submit the required paperwork and attempted to blame Doe. Doe had raised several complaints with the administration about failing to complete his paperwork, and, in response, Defendants' Director of Student Services summoned Doe to appear before TCOM's Student Performance Committee

---

[1] *See* Tex. Educ. Code Ann. § 105.401.

("SPC"). Doe was interrogated by the SPC as to why Doe failed to finalize his position with his fourth rotation site. In response, Doe explained that the failure to finalize his position with the fourth rotation site was not due to a lack of effort on his part but was due to the failure of Defendants to meet their obligation to submit the necessary paperwork.

10.     The SPC initially was called for a claim of unprofessional conduct initiated by Katy Kemp, who was the Director of clinical rotations. To Doe's knowledge, the SPC did not issue or rule on any unprofessional conduct; the unprofessional conduct was never investigated or findings presented to the SPC, so no action was taken. Doe had passed the COMPLEX exam within three attempts, as permitted by TCOM's policy, and the SPC interrorgated Doe for complaining about the administration's failures to submit the proper documentation for his rotations. However, Doe informed the SPC about his sleep deprivation related to airway issues and side effects from sleeping pills that had been prescribed by UNTHSC physicians. The sleeping pills prescribed for insomnia dramatically worsened Doe's sleep apnea and led to at least one aspiration event while sleeping. This event pushed Doe to exhaustion. The SPC ultimately characterized the disputed issues as being related to Doe's health condition.

11.     Because of his health complications caused by sleep apnea, the dispute with TCOM, and the unexpected inquisition from the SPC, Doe requested a one-year medical leave of absence, as was recommended to Doe by the Student Health Physician because of his sleep deprivation. Doe's request for a medical leave of absence was made on a signed university form that contained the conditions for such medical leave. Doe submitted the request for a medical leave of absence to Assistant Vice Dean Dr. Frank Filipetto, and Filipetto granted the request and returned the form signed by Filipetto on November 9, 2016 (the "medical LOA"). The SPC

accepted the medical LOA and, to Doe's knowledge, there were no academic sanctions issued or voted on by the SPC.

**B. The State Due Process Action**

12.     According to the terms of Doe's medical LOA, Doe was required to notify UNTHSC of his intention to re-enroll at TCOM by July 2017 (the "Re-enrollment Deadline"). However, before Doe had an opportunity to re-enroll, Doe was formally dismissed by Defendants. Defendants dismissed Doe in violation of the medical LOA, prior to the expiration of the Re-enrollment Deadline, and without any notice or opportunity to participate by Doe. Doe properly appealed the decision; however, Doe's request was immediately denied without any meaningful opportunity for Doe to be heard.

13.     Because Doe understood that he was supposed to comply with the terms of the medical LOA that he had received from Dr. Filipetto, Doe believed that Defendants had acted arbitrarily in dismissing him in failing to follow UNTHSC's policies and conditions set forth in the medical LOA without notice or a hearing. Thus, Doe sued Defendant UNTHSC and the official capacity defendants for depriving Doe of due process by arbitrarily dismissing him from TCOM prior to the time in which Doe was allowed to re-enroll in classes under the terms of the medical LOA. This action will be referred to as the "State Due Process Action."

14.     The 153rd Judicial District Court granted a plea to the jurisdiction filed UNTHSC and the official capacity defendants on the ground that the state court petition failed to state sufficient facts to establish jurisdiction over UNTHSC, given that the dismissal was non-disciplinary and considered to be "academic" in nature.

15.     The Second District Court of Appeals affirmed, and the Supreme Court of Texas has initially denied Doe's petition for review. The State Due Process Action is currently pending a motion for rehearing before the Supreme Court of Texas.

**C.  Discovery of the Acts Involved in Dismissing Doe from School Based on Filipetto and Mire's beliefs that Doe was disabled**

16.     On May 17, 2019, in response to discovery requests in the State Due Process Action, UNTHSC disclosed to Doe a letter (the "Filipetto Letter") that had been signed by Defendant Frank Filipetto and, according to Defendants, had been purportedly sent to Doe. But Doe never received the Filipetto Letter in any format, and the Filipetto Letter contained additional conditions on Doe's leave of absence that were never communicated to Doe. Additionally, the Filipetto Letter stated that Doe was on academic probation, even though Doe had not failed to meet any academic criteria (he passed his COMPLEX exam within three attempts as required by the school's policy), and the SPC had agreed that its findings were related to Doe's health complications, which had been caused in part by sleeping pills prescribed by UNTHSC physicians. Doe had never received the Filipetto Letter before May 17, 2019.

17.     After Doe had an opportunity to review the Filipetto Letter, Doe became aware that Defendant Dr. Frank Filipetto had intended to prevent him from returning from his leave of absence under any circumstances and that Filipetto had convinced the SPC to dismiss Doe through false representations about Doe's academic standing and about Doe's mental health.

18.     After the SPC had dismissed Doe from TCOM, Doe attempted to challenge the decision by meeting with UNTHSC faculty and staff, including Defendants Emily Mire, Thomas Moorman, and Frank Filipetto.

19.     Mire was the UNTHSC employee who called Doe on July 25, 2017 to inform him that UNTHSC had convened another committee hearing without him and had dismissed him from TCOM. In accordance with the conditions of the medical LOA that Doe had actually signed, Doe had already receieved clearance from a physician that he was fit to return to TCOM. The medical LOA had been accepted and signed by Filipetto, and it had been returned to Doe shortly after being

signed by Filipetto. Thus, the call from Mire before the end of July 2017 came as quite a surprise to Doe.

20.     Mire is an executive director on UNTHSC's Student & Academic Affairs Executive Team, but she is not a physician. Nevertheless, Mire had told Doe that he should not continue his pursuit to become a doctor because, in her unqualified opinion, she believed Doe was depressed and suffering from bipolar disorder. Doe requested to meet with Dr. Mormon, and Doe met with Mire and Mormon on July 26, 2017.

21.     During the meeting with Mormon and Mire again discussed her opinion that Doe's problems were connected with depression and bipolar disorder. Doe disagreed with Mire's assertion that he was bipolar, but Mire continued to insist that, while she was not a physician, it remained her opinion.

22.     Dr. Mormon informed Doe that the SPC had dismissed him. Doe told Mormon that Doe had not been contacted about the contradictory deadline that UNTHSC was then alleging he had missed, and Doe asked that UNTHSC to address the discrepancy between this earlier, incorrect deadline and the one Doe had received. Mormon stated that one email was sent, but Doe never received such an email on any email account. Mormon told Doe that he could appeal the decision to Filipetto, and Mormon indicated he believed there was no reason for Filipetto to reject the appeal. Mormon further stated that Doe had plenty of time to graduate and that the administrative issues causing problems with clinical rotations had been resolved.

23.     Doe sent Filipetto an appeal letter via email on July 31, 2017, and Doe met with Filipetto on August 3, 2017, to discuss the dismissal in an in-person meeting. During the meeting, Filipetto acted very disinterested and disrespectful toward Doe. Filipetto communicated to Doe that Filipetto considered himself to have the power to prevent Doe from graduating, and Filipetto

Case 4:21-cv-00658-O   Document 1   Filed 05/14/21   Page 8 of 21   PageID 8

explicitly stated that he did not want Doe to become a doctor. Filipetto admitted that Doe's academics had nothing to do with his dismissal and that he believed he could dismiss Doe for any reason. Filipetto stated that he believed Doe was depressed because he did not really want to become a doctor.

24.    Although Doe's sleep apnea had previously caused depression that was situational, episodic, or otherwise intermittent in nature, but that depression was treatable, and, in fact, Doe was able to obtain treatment of his sleep apnea and manage his depression. Doe responded that Filipetto was wrong about the depression and made it clear that he did want to become a doctor. Nevertheless, Filipetto concluded that, after talking with Mire about Doe, he believed he should dismiss Doe.

25.    It is worth noting again: Mire is not a physician or psychiatrist with the proper training to diagnose Doe with bipolar disorder. Neither Filipetto nor Mire considered the opinion of Doe's physician that Doe was in good health and fit to return to medical school. Instead, Filipetto and Mire regarded Doe as disabled and unfit to continue his course of study. Doe previously was unable to appreciate Filipetto and Mire's direct involvement in his dismissal— which had previously been characterized as merely an administrative dismissal by UNTHSC—but disclosure of the Filipetto Letter in 2019 alerted Doe to the fact that Filipetto and Mire's opinion that he was disabled had motivated them to meddle with his medical leave of absence and to orchestrate his dismissal.

26.    When UNTHSC eventually disclosed the Filipetto Letter to Doe on May 17, 2019, Doe learned that not only did Filipetto harbor a personal vendetta against Doe but also Filipetto went out of his way to use his office to convince the SPC to dismiss Doe through false representations about Doe's mental health and Doe's alleged receipt of the Filipetto Letter. Upon

information and belief, Filipetto communicated false information to the SPC about the nature of Doe's mental health, conduct, and academic performance, and Filipetto falsely communicated to the SPC and other faculty that he submitted the Filipetto Letter to Doe. Filipetto targeted Doe with this conduct to ensure Doe's separation from TCOM because Filipetto regarded Doe as a liability and unfit based on his opinion that Doe was disabled.

27.     Filipetto received Doe's request to enter into the medical LOA, and Filipetto accepted, signed, and returned the medical LOA to Doe. By delivering the letter to Doe, Filipetto intentionally induced Doe into taking a full year leave of absence with the belief that he would be able to resume his course of study as long as he re-enrolled under the conditions set forth in the LOA by the end of July 2017. Upon information and belief, Filipetto knew that Doe would rely on the signed LOA and be unable to meet the additional standards in the Filipetto Letter. Filipetto drafted the Filipetto letter to have the appearance that Doe would receive it so that UNTHSC would punish Doe and dismiss him for failing to meet the requirements that he was never made aware of. Upon information and belief, Mire communicated with Filipetto about this plan and agreed to prevent Doe from receiving the Filipetto Letter and/or convince the UNTHSC committee that Doe should be held to those unknown standards. Upon information and belief, Filipetto and Mire both knew that Doe would rely on the medical LOA and induced Doe into conducting himself under the medical LOA. Filipetto and Mire also knew that the UNTHSC committee would rely on the Filipetto Letter; Filipetto and Mire falsely represented that Doe had received the Filipetto Letter in order to induce the UNTHSC committee and/or UNTHSC administration into holding Doe to the standards under the Filipetto Letter.

28.     Upon information and belief, Defendant Dr. Thomas Moorman was aware of Filipetto and Mire's plan, and Dr. Moorman agreed to refrain from exercising his authority to

intervene and allowed Filipetto and Mire to have Doe dismissed from TCOM. Dr. Mire told Doe that she was a close friend of Katy Kemp, who had accused Doe of unprofessional conduct before the SPC regarding Doe's complaints about Kemp's failures to provide Doe's clinical rotation paperwork. Upon information and belief, Mire regarded Doe as depressed or bipolar to explain Doe's complaints about Kemp's administrative failures. Upon information and belief, because Moorman supervised Mire, Moorman agreed with Mire's opinion that Doe was disabled by depression or a bipolar disorder and further agreed that he should be dismissed from TCOM.

29.     By deceiving both Doe and the UNTHSC committees, Defendants accomplished their goal of having Doe dismissed from TCOM. Ultimately, Filipetto, Mire, and Moorman regarded Doe as disabled and agreed to coordinate his dismissal from medical school and deny him the second chances and opportunities afforded to other students. UNTHSC regularly provides TCOM students with multiple opportunities to retake exams and courses in order to complete medical school. UNTHSC has even extended these opportunities to Doe's peers who were caught cheating on national licensing exams and engaging in illicit drug use.  Given the enormous financial investment the students make in medical school and the inevitable pressures that arise from individual extenuating circumstances, UNTHSC's general policy and practice of leniency toward students is reasonable and understandable. Yet, although Doe had completed the majority of his medical school program and was attempting to complete his fourth year, UNTHSC, Filipetto, Mire, and Moorman regarded Doe as disabled and denied him the leniency and opportunities regularly afforded to other students. While Filipetto and UNTHSC would have extended more leniency to other students and afforded them an opportunity to continue in medical school, UNTHSC, Filipetto, and Mire took a hardline stance against Doe because Defendants regarded him as disabled. Defendants discriminated against Doe both on the basis of his temporary disability

and also on the basis of another disability that they regarded him as having. As a result, Doe was denied appropriate accommodations and other opportunities regularly afforded to other students. While Doe knew that Filipetto and Mire opposed his re-enrollment, the May 17, 2019 disclosure of the Filipetto alerted Doe to the fact that Defendants intentionally caused his dismissal and prevented his re-enrollment on the basis of his actual and perceived disabilities.

## IV.     FIRST CAUSE OF ACTION
### "REGARDED AS" CLAIM UNDER THE REHABILITATION ACT OF 1973, § 504, 29 U.S.C. § 794, AS AMENDED BY THE ADAAA, 42 U.S.C. §§ 12131–12134

30.     The above paragraphs are incorporated herein for all purposes.

31.     Section 504 of the Rehabilitation Act of 1973, as amended, ("Section 504") prohibits discrimination against individuals with disabilities. The Americans with Disabilities Act Amendments Act of 2008 (the "ADAAA"), effective January 1, 2009, amended the Americans with Disabilities Act of 1990 (ADA) and included a conforming amendment to the Rehabilitation Act of 1973 (Rehabilitation Act) that affects the meaning of "disability" in Section 504, which relies upon the expanded definition under the ADAAA.

32.     Section 504, as amended by the ADAAA and conforming amendments to the Rehabilitation Act, prohibits discrimination on the basis of disability in programs or activities that receive Federal financial assistance from the U.S. Department of Education. Specifically, Section 504 provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. § 794(a).

33.     "To state a claim for relief under Section 504, a plaintiff must allege that she or he was: (1) an 'individual with a disability'; (2) 'otherwise qualified' for the program; and (3) excluded from, denied the benefits of, or otherwise subjected to discrimination under the program "'solely by reason of her or his disability.'" *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 Fed. Appx. 215, 219 (5th Cir. 2018) (quoting 29 U.S.C. § 794(a)). "Under the Rehabilitation Act, an 'individual with a disability' means any person who has a 'disability,' as that term is defined in the ADA." *Id.* (quoting 29 U.S.C. §§ 794(a), 705(20)(B)).

34.     "The ADA defines 'disability' as: '(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment....'" *Id.* (quoting 42 U.S.C. § 12102(1)). "[M]ajor life activities include ... learning, reading, concentrating, thinking, ... and working," as well as "the operation of a major bodily function, including ... neurological, brain, ... [and] endocrine ... functions." *Id.* (quoting 42 U.S.C. § 12102(2)(A)–(B). "The ADA mandates that '[t]he definition of disability ... be construed in favor of broad coverage of individuals ... to the maximum extent permitted by the terms of [the statute].'" *Id.* (quoting 42 U.S.C. § 12102(4)(A).

35.     UNTHSC and TCOM constitute a program or activity receiving Federal financial assistance because UNTHSC/TCOM is an institution of higher education that is part of a university system of higher education that receives federal funds in the form of grants, tuition, and financial aid.

36.     Doe meets the requirement of "being regarded as having such an impairment" because Doe has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment. Specifically, Filipetto and Mire concluded that Doe was

disabled by depression and a purported bipolar disorder, and, because Filipetto and Mire regarded Doe as disabled, UNTHSC viewed Doe as a liability to the medical school and determined to remove him from the program without regard to Doe's actual ability to complete his studies and later practice medicine. Additionally, Defendants UNTHSC, Filipetto, and Mire intentionally denied Doe the leniency and opportunities ordinarily extended to other students because they regarded Doe as disabled by what they perceived to be depression and a bipolar disorder. However, Defendants disregarded and/or failed to consider the opinion of Doe's physician that Doe was healthy and fit to return to medical school. Instead, Filipetto and Mire determined among themselves and agreed that Doe should be dismissed from TCOM because they perceived him to be disabled.

37.      Doe was otherwise qualified to continue his course of study in TCOM. Filipetto admitted to Doe that his academics were not the issue, and UNTHSC previously maintained that it had only administratively dismissed Doe because Doe failed to follow the conditions set forth in the Filipetto Letter, which were unknown to Doe until May 17, 2019, well after his dismissal. It was not until Doe received the Filipetto Letter that he realized that he would have been able to satisfy the additional requirements set out in the Filipetto Letter if Filipetto had actually sent him the letter. If Doe had received the Filipetto Letter, Doe would have rejected the additional conditions and the erroneous and wrongful academic-probation designation contained in the Filipeeto Letter, and Doe would have appealed the Filipetto Letter. If Filipetto had not interfered with Doe's medical leave of absence, Doe would have satisfied the conditions in the Filipetto Letter and would not have been dismissed by the UNTHSC committee. Thus, setting aside Doe's medical leave of absence under the LOA and his inability to satisfy the conditions of the Filipetto Letter that were never communicated to him because of Filipetto's purposeful conduct in

withholding such information from Doe, Doe was otherwise qualified to continue in his fourth year at TCOM, as he had successfully done for three years.

38.    Doe was denied the opportunities and benefits of continuing in his fourth year at TCOM solely because UNTHSC, Filipetto, and Mire concluded that he was unfit as a result of their opinion that Doe was depressed and suffered from bipolar disorder. Doe completed all academic requirements for his course, and the SPC had previously concluded that any shortcomings of Doe were related to medical issues. Doe would have been able to successfully continue his fourth year of studies following the medical leave of absence "but for" UNTHSC, Filipetto, and Mire's collaborative efforts to prevent Doe from re-enrolling in his courses for his fourth-year rotations by withholding the Filipetto Letter from Doe and misrepresenting to the UNTHSC committee the nature of Doe's LOA. UNTHSC, Filipetto, and Mire engaged in this conduct because they concluded that Doe was disabled and unworthy to continue in TCOM by reason of their regard for Doe as being disabled.

39.    Because Defendants discriminated against Doe because of a disability, or their opinion that Doe was disabled, Doe suffered economic damages, reputational damage, severe emotional distress, and the loss of the ability to continue his education elsewhere and pursue his chosen profession. Defendants robbed Doe of all the valuable time, money, and energy that Doe spent working toward his medical degree at UNTHSC.

**V.    SECOND CAUSE OF ACTION**
**DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT OF 1973,**
**§ 504, 29 U.S.C.A. § 794, AS AMENDED BY THE ADAAA, 42 U.S.C. §§ 12131–12134**

40.    The above paragraphs are incorporated herein for all purposes.

41.    Alternatively, Filipetto and Mire concluded that Doe should be dismissed from TCOM because of an actual situational, episodic, or intermittent disability in the form of

depression related to sleep deprivation for which Doe obtained treatment. This disability substantially limited major life activities including thinking, concentrating, sleeping, and communicating, but those limitations could be mitigated through treatment. Although Defendants knew that such depression was treatable and did not in fact interfere with Doe's academics (Filipetto admitted to Doe that he had no academic deficiency), Defendants believed that Doe was unfit and unworthy to become a doctor associated with UNTHSC because of Doe's depression. Because Defendants wanted Doe out of TCOM, Defendants induced Doe to take a medical leave of absence based on the LOA and then either manufactured the Filipetto Letter or purposefully withheld the Filipetto Letter from Doe in order to prevent him from continuing with his course of study and to convince the UNTHSC committee to dismiss Doe. Doe was otherwise qualified to continue his fourth year in TCOM, absent the intentional discrimination that caused his dismissal. Once Doe learned about the Filipetto Letter, Doe discovered that Mire and Filipetto not only opposed Doe's re-enrollment, but also Defendants actively caused his dismissal because of his actual disability. As a result, UNTHSC, Filipetto, and Mire discriminated against Doe and prevented him from participation in and benefits afforded to other students in TCOM.

## VI.    THIRD CAUSE OF ACTION
## EQUAL PROTECTION CLAIM UNDER THE
## FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION

42.    The above paragraphs are incorporated herein for all purposes.

43.    Doe is a member of a protected class because he is disabled or is regarded as disabled by virtue of Defendants' opinion that Doe suffers from depression and bipolar disorder. Additionally, Doe was disabled during and before his medical leave of absence as a result of his sleep apnea and its worsening caused by the sleeping pills prescribed by UNTHSC physicians.

44.     Doe is otherwise similarly situated to other students at UNTHSC who are not disabled. Doe completed three successful years in TCOM, and Doe had completed all of his academic requirements other than his fourth-year rotations. It is worth noting that Doe is a highly capable and accomplished student who had obtained degrees in finance and biology before medical school while maintaining a full-time job and publishing academic papers. Doe received treatment for his sleep deprivation and received a clean bill of health from his physician so that he should have been allowed to return to his fourth year of medical school.

45.     Doe was treated differently than UNTHSC/TCOM students who are not disabled. While other students were given multiple chances to re-take exams and courses, Doe was denied these opportunities and accommodations. Moreover, because Defendants regarded Doe as disabled and unworthy of becoming a doctor through UNTHSC, Defendants went out of their way to prevent Doe from completing his fourth-year rotations by papering Doe's file with the Filipetto Letter, which falsely purported to have been submitted to Doe and which purported to modify Doe's leave of absence (unbeknownst to Doe). Defendants had no legitimate basis to treat Doe differently than other students and prevent Doe from continuing in his fourth year; Defendants caused Doe's dismissal solely because of his actual or perceived disability.

46.     As a result, Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Defendants should be enjoined to reinstate Doe in TCOM and to allow Doe to continue his course of study at UNTHSC.

### VII.    FOURTH CAUSE OF ACTION
### DUE PROCESS CLAIM UNDER THE FIFTH AND FOURTEENTH
### AMENDMENTS TO THE U.S. CONSTITUTION

47.     The above paragraphs are incorporated herein for all purposes.

48.     Defendants intentionally deprived Doe of his liberty interest in his reputation and his right to pursue his chosen profession, and deprived Doe of his property interest in his education and medical degree without due process of law. Defendants engaged in abuses of power in preventing Doe from continuing in his fourth year in TCOM by convincing the UNTHSC committee to dismiss Doe through falsely representing the nature of Doe's LOA through the Filipetto Letter. These arbitrary and capricious acts constituted abuses of power and deprived Doe of a fundamentally fair hearing and caused the deprivation of his liberty and property through intentional and fraudulent conduct motivated by animus toward people with mental disabilities.

49.     As a result, Defendants violated the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, and Defendants should be enjoined to reinstate Doe in TCOM and to allow Doe to continue his course of study at UNTHSC.

## VIII.   FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983

50.     The above paragraphs are incorporated herein for all purposes.

51.     Defendants acted pursuant to their authority under color of state law in committing the above-described acts in treating Doe different than other similarly situated students based on an actual or perceived disability and denying Doe his property and liberty interests. Defendants deprived Doe of his property interest in his education and medical degree, and of his liberty interest in his reputation and in his right to pursue his chosen profession. Defendants intentionally interfered with Doe's ability to continue his course of study by convincing the committee to dismiss Doe through false representations in the Filipetto Letter. Defendants committed these abuses of power because they regarded Doe as disabled and undesirable in TCOM. As a result, Defendants violated Doe's right to equal protection and due process under the Fifth and Fourteenth Amendments to the United States Constitution as proscribed by 42 U.S.C. § 1983.

## IX.   SIXTH CAUSE OF ACTION
## DISABILITY DISCRIMINATION UNDER THE ADA,
## AS AMENDED BY THE ADAAA, 42 U.S.C. §§ 12131–12134

52.     The above paragraphs are incorporated herein for all purposes.

53.     Title II, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

54.     As set forth in more detail above, Doe was excluded from the services, programs, and activities of UNTHSC, which is an institution of higher education within a public university system, on account of an actual or perceived disability. Doe suffered from sleep apnea, which caused situational, episodic, or intermittent depression and fatigue. This condition substantially affected major life activities including thinking, concentrating, sleeping, and communicating. Defendants also perceived Doe to have not only depression but also bipolar disorder. Defendants discriminated against Doe on the basis of these actual or perceived disabilities.

55.     Doe was an otherwise qualified student and was treated differently than other students who received more leniency and accommodations in order to progress through their medical studies in TCOM. While they university bent over backwards to help other students navigate personal crises and even, in at least one case, intervening to the students benfit regarding a national licensing exam after being caught cheating, Defendants took a hardline position against Doe based on their opinion that Doe was disabled by virtue of depression and a bipolar disorder. Because Defendants considered Doe to be disabled, undesirable, and unworthy of being associated with UNTHSC, Defendants interfered with Doe's medical leave of absence and actively caused Doe's dismissal through false representations to the UNTHSC committee via the Filipetto Letter.

As a result, UNTHSC, Filipetto, and Mire discriminated against Doe and prevented him from participation and benefits afforded to other students in TCOM because they regarded Doe as disabled.

56.     Accordingly, Defendants are liable under the ADA, as amended by the ADAAA.

## X.     SEVENTH CAUSE OF ACTION
## FRAUD

57.     "To prevail on a fraud claim, a plaintiff must show: (1) the defendant 'made a material representation that was false'; (2) the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

58.     Filipetto and Mire concluded that Doe was disabled, undesirable, and unworthy to be associated with UNTHSC and TCOM. Filipetto submitted the signed LOA to Doe, knowing that Doe would be induced to take a one-year medical leave of absence with knowledge of the conditions contained in the LOA. Subsequently, Filipetto drafted the Filipetto Letter to "paper" Doe's file and add requirements and conditions to Doe's medical leave of absence that would be unknown to Doe and impossible for Doe to fulfill. After Doe attempted to satisfy the terms of the signed LOA, Filipetto and Mire agreed to use the Filipetto Letter to convince the UNTHSC committee to dismiss Doe. Because Doe actually relied on the LOA, which was reasonable given that the LOA was the only document signed by Filipetto and delivered to Doe, and Doe was dismissed from medical school. This caused Doe to suffer economic harm, reputational damage, and severe emotional distress.

59.     Accordingly, Defendants Filipetto and Mire are liable to Doe in their individual capacities for committing fraud.

## XI.     JURY DEMAND

60.     Plaintiff demands a trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Doe respectfully prays that the court issue citation for Defendants to appear and answer; that the Court grant Doe prospective injunctive relief, enjoining Defendants to reinstate Doe and allow him to complete his medical degree; and that Doe be awarded damages in such sums as the jury deems fair and just, including:

(a)     Actual, consequential, and economic damages;

(b)     Attorney's fees;

(c)     Costs of court;

(d)     Punitive damages as allowed by law;  and

(e)     Pre- and Post-judgment interest in the maximum amounts allowed by law.

Additionally, Doe requests any and all further relief, at law or in equity, general or special, to which Doe may be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone:  (979) 694-7000
Facsimile:   (979) 694-8000

By: *Is Gaines West*  _____
     GAINES WEST
     State Bar No. 21197500
     Email:  gaines.west@westwebb.law
     JOHN "JAY" RUDINGER, JR.
     State Bar No. 24067852

Email: jay.rudinger@westwebb.law

- AND -

By /s Kyle Carney
    KYLE T. CARNEY
    State Bar No. 24096789
    309 W. 7th Street Suite 710
    Fort Worth, Texas 76102
    Telephone: (817) 768-3590
    Email ~ kyle.carney@westwebb.law

**ATTORNEYS FOR PLAINTIFF**