# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOHN DOE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:21-cv-00658-O** |
| | § | |
| **UNIVERSITY OF NORTH TEXAS** | § | |
| **HEALTH SCIENCE CENTER, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' Motion to Dismiss (ECF No. 12), filed September 7, 2021; Plaintiff's Response (ECF No. 16), filed September 28, 2021; and Defendants' Reply (ECF No. 19), filed October 12, 2021. For the reasons that follow, the Court finds that it should be and is hereby **GRANTED in part** and **DENIED in part**.

## I.        BACKGROUND[1]

### A.        Overview

This cause of action arose out of Defendant University of North Texas Health Science Center's ("UNTHSC") dismissal of Plaintiff John Doe. Plaintiff began medical school in the fall of 2014 at Texas College of Osteopathic Medicine ("TCOM"), part of UNTHSC, and completed the first three years of medial school without issue.[2] But during Plaintiff's fourth year, Plaintiff requested a one-year medical leave of absence.[3]

---

[1] The Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Compl. ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

[2] Compl. ¶ 8, ECF No. 1.

[3] *Id.* at ¶ 11.

1

The request was submitted to Defendant Dr. Frank Filipetto, serving as Assistant Vice Dean, as well as to TCOM's Student Performance Committee ("SPC").[4] Filipetto granted the request on November 9, 2016.[5] According to the terms of Plaintiff's leave of absence, Plaintiff was required to notify UNTHSC of his intention to re-enroll by July 2017.[6] Prior to the expiration of the re-enrolment deadline, the SPC formally dismissed Plaintiff.[7] Plaintiff was given no notice or opportunity to participate in this decision prior to notification of his dismissal.[8] Plaintiff properly appealed the decision, but he asserts his appeal was denied without any meaningful opportunity to be heard.[9]

Plaintiff unsuccessfully attempted to challenge the dismissal by meeting with UNTHSC faculty and staff, including Defendant Emily Mire, Defendant Thomas Moorman,[10] and Frank Filipetto.[11] After Plaintiff's dismissal, he was informed by Defendants that there was an earlier deadline to reenroll that Plaintiff had failed to meet.[12] When Plaintiff met with Moorman, Moorman stated an email had previously been sent to Plaintiff informing him of this earlier deadline, but Plaintiff asserts he never received the email.[13] Plaintiff sent Filipetto an appeal letter on July 31, 2017, and the two met to discuss Plaintiff's dismissal on August 3, 2017.[14] Filipetto stated he did not want Plaintiff to become a doctor and that Plaintiff "was depressed because he

---

[4] *Id.*
[5] *Id.*
[6] *Id.* at ¶ 12.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] In his complaint, Plaintiff refers to a "Dr. Mormon" nine times. See Compl. ¶¶ 20 –22, ECF No. 1. The Court presumes this is an error and construes all instances of "Dr. Mormon" as references to Dr. Thomas Moorman.
[11] *Id.* at ¶ 18.
[12] *Id.* at ¶ 22.
[13] *Id.*
[14] *Id.* at ¶ 23.

did not really want to become a doctor."[15] Plaintiff "responded that Filipetto was wrong about the depression and made it clear that he did want to become a doctor."[16] But Filipetto concluded that after talking with Mire, he believed Plaintiff should be dismissed.[17]

### B.    Litigation History

Plaintiff then filed a state due process claim ("State Due Process Action") against UNTHSC and the Official Capacity Defendants for allegedly depriving Plaintiff of his due process.[18] The 153rd Judicial District Court dismissed the claim,[19] the Second District Court of Appeals affirmed, and the Supreme Court of Texas denied Plaintiff's petition for review and petition for rehearing.[20]

### C.    The Letter and Allegations

On May 17, 2019, through discovery in the State Due Process Action, UNTHSC disclosed a letter, signed by Filipetto and dated on November 1, 2016, that Filipetto claims to have sent to Plaintiff, but that Plaintiff claims he never received.[21] The letter contained additional conditions of Plaintiff's leave, including the earlier deadline for re-enrollment, and provided Plaintiff was on academic probation.[22] Plaintiff alleges this letter shows Filipetto never intended to allow Plaintiff to return from his leave and that Filipetto would accomplish this by making false representations regarding Plaintiff's academic standing and mental health.[23] Plaintiff alleges Filipetto communicated this false information to the SPC and falsely told the SPC and other faculty

---

[15] *Id.*
[16] *Id.* at ¶ 24.
[17] *Id.*
[18] *Id.* at ¶ 13.
[19] *Doe v. Univ. of N. Tex. Health Sci. Ctr.*, No. 02-19-00321-CV, 2020 WL 1646750 at *2 (Tex. App. Apr. 2, 2020), *review denied* (Apr. 16, 2021).
[20] *Id.* at *1; *See* Def.'s Mot. to Dismiss 11, ECF No. 12.
[21] Compl. at ¶ 16, ECF No. 1; Defs.' App. 18–19, ECF No. 12-1.
[22] Defs.' App. 18–19, ECF No. 12-1.
[23] Compl. at ¶ 17, ECF No. 1.

members that he had sent the letter to Plaintiff.[24] "Filipetto targeted Doe with this conduct to ensure

Doe's separation from TCOM because Filipetto regarded Doe as a liability and unfit based on his

opinion that Doe was disabled."[25] Plaintiff further alleges:

> Filipetto received Doe's request to enter into the medical LOA ("Leave of
> Absence"), and Filipetto accepted, signed, and returned the medical LOA to Doe.
> By delivering the letter to Doe, Filipetto intentionally induced Doe into taking a
> full year leave of absence with the belief that he would be able to resume his course
> of study as long as he re-enrolled under the conditions set forth in the LOA by the
> end of July 2017. Upon information and belief, Filipetto knew that Doe would rely
> on the signed LOA and be unable to meet the additional standards in the Filipetto
> Letter. Filipetto drafted the Filipetto letter to have the appearance that Doe would
> receive it so that UNTHSC would punish Doe and dismiss him for failing to meet
> the requirements that he was never made aware of. Upon information and belief,
> Mire communicated with Filipetto about this plan and agreed to prevent Doe from
> receiving the Filipetto Letter and/or convince the UNTHSC committee that Doe
> should be held to those unknown standards. Upon information and belief, Filipetto
> and Mire both knew that Doe would rely on the medical LOA and induced Doe into
> conducting himself under the medical LOA. Filipetto and Mire also knew that the
> UNTHSC committee would rely on the Filipetto Letter; Filipetto and Mire falsely
> represented that Doe had received the Filipetto Letter in order to induce the
> UNTHSC committee and/or UNTHSC administration into holding Doe to the
> standards under the Filipetto Letter.[26]

Plaintiff alleges Moorman was aware of this plan and agreed to refrain from intervening,

thus allowing Filipetto and Mire to have Plaintiff dismissed.[27] Further, Plaintiff contends, "[u]pon

information and belief, because Moorman supervised Mire, Moorman agreed with Mire's opinion

that Doe was disabled by depression or a bipolar disorder and further agreed that he should be

dismissed from TCOM."[28]

In sum, Plaintiff alleges Defendants conspired to, and succeeded in, dismissing Plaintiff.

He contends this conspiracy involved deceiving Plaintiff and the UNTHSC committees.[29] Plaintiff

---

[24] *Id.* at ¶ 26.
[25] *Id.*
[26] *Id.* at ¶ 27.
[27] *Id.* at ¶ 28.
[28] *Id.*
[29] *Id.* at ¶ 29.

alleges Defendants partook in this this scheme because they regarded Plaintiff as disabled and "[a]s a result, Doe was denied appropriate accommodations and other opportunities regularly afforded to other students."[30] Plaintiff argues that while he "knew that Filipetto and Mire opposed his re-enrollment, the May 17, 2019 disclosure of the [letter from] Filipetto alerted Doe to the fact that Defendants intentionally caused his dismissal and prevented his re-enrollment on the basis of his actual and perceived disabilities."[31]

### D.   Federal Court

Plaintiff filed the present action on May 14, 2021, asserting seven causes of action.[32] First, Plaintiff asserts a "regarded as" cause of action under the Rehabilitation Act of 1973, which prohibits discrimination based on a disability in educational programs or activities that receive federal funding.[33] *See* 29 U.S.C. § 794(a). Second, Plaintiff asserts a cause of action for intentional disability discrimination under the same statute.[34] Third, Plaintiff asserts an equal protection claim under the Fourteenth Amendment, which prohibits the government from depriving anyone of equal protection under the law.[35] Fourth, Plaintiff asserts a due process claim under the Fifth and Fourteenth Amendments, which prohibit deprivation of a liberty or property interest without due process.[36] Fifth, Plaintiff asserts a cause of action under 42 U.S.C. § 1983, asserting Defendants acted pursuant to their authority under the color of state law in violating Plaintiff's equal protection and due process rights.[37] Sixth, Plaintiff asserts a disability discrimination cause of action under the Americans with Disabilities Act, which provides that "no qualified individual with a disability

---

[30] *Id.*
[31] *Id.*
[32] *Id.* at ¶¶ 30–59.
[33] *Id.* at ¶¶ 30–39.
[34] *Id.* at ¶¶ 40–41.
[35] *Id.* at ¶¶ 42–46.
[36] *Id.* at ¶¶ 47–49.
[37] *Id.* at ¶¶ 50–51.

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[38] 42 U.S.C. § 12132. And seventh, Plaintiff asserts a cause of action for fraud.[39]

Defendants filed this Motion to Dismiss, seeking dismissal of this case under various theories.[40] The parties briefed the issues, and they are now ripe for consideration.

## II.        LEGAL STANDARD

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S.

---

[38] *Id.* at ¶¶ 52–56.
[39] *Id.* at ¶¶ 57–59.
[40] *See* Mot., ECF No. 12.

at 557) (cleaned up). A court may not accept legal conclusions as true. *Id.* at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.        ANALYSIS

UNTHSC and Drs. Filipetto, Mire, and Moorman in their official capacity ("Official Capacity Defendants") seek dismissal, arguing (1) res judicata bars Plaintiff's claims; (2) the statute of limitations bars Plaintiff's claims; (3) sovereign immunity bars Plaintiff's Americans with Disabilities Act ("ADA") and Section 1983 claims; and (4) Plaintiff has failed to state a claim entitling him to relief. Drs. Filipetto, Mire, and Moorman in their individual capacity ("Individual Capacity Defendants") seek dismissal, arguing (1) the ADA and Rehabilitation Act do not create a cause of action for individual liability; (2) the Individual Capacity Defendants are entitled to qualified immunity from Plaintiff's constitutional claims; and (3) alternatively, Plaintiff has failed to plead a cause of action. Finally, Defendants argue Plaintiff's fraud claims should be dismissed against all Defendants. The Court turns to each below.

#### A. Res Judicata

The Official Capacity Defendants argue they are entitled to res judicata based on a Texas court's prior rulings in the State Due Process Action.[41] The Court agrees.

"[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). Res judicata serves as an affirmative defense under Rule 8(c). Fed. R. Civ. P. 8(c). The Court may also consider judicially noticeable matters. *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir.

---

[41] Mot. 10–21, ECF No. 12.

2008) (per curiam) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper.").

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004) (internal quotation omitted). And "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

As the prior rulings on this matter were issued by a Texas state court, the Court will apply "Texas law to determine the res judicata effect of a Texas judgment." *Harmon v. Dallas Cty.*, 927 F.3d 884, 890 (5th Cir. 2019). Texas claim preclusion law requires:

> (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. If all three elements are satisfied, claims that have been finally adjudicated, or claims that arise out of the same occurrence and that could have been litigated, are precluded by res judicata.

*Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 460–61 (5th Cir. 2007). The Court turns to each requirement below.

### 1. There was a prior final judgment on the merits.

Official Capacity Defendants argue "Doe's state court action against UNTHSC bars his claims against UNTHSC and the Official Capacity Defendants in this Court because the state district court dismissed his claim with prejudice on the basis of governmental immunity."[42] This decision was affirmed by a state appellate court, and the Supreme Court of Texas denied Plaintiff's

---

[42] Mot. 11, ECF No. 12 (citing Defs.' App. 31, ECF No. 12-1).

petition for review and rehearing. [43] The Court may consider this because it is both pleaded and available in the public record.[44]

Under Texas law, "a grant of a plea to the jurisdiction is a dismissal on the merits for purpose of res judicata." *Sims*, 894 F.3d at 644. Likewise, "under Texas law, a dismissal based on governmental immunity constitutes a final judgment on the merits for purposes of res judicata." *Harmon*, 927 F.3d at 890; *see also Klein v. Walker*, 708 F. App'x 158, 160 (5th Cir. 2017) ("[A] dismissal on immunity grounds under Texas law is a dismissal on the merits for purposes of res judicata.").

The State Due Process Action was dismissed when the district court granted Defendants' plea to the jurisdiction on sovereign immunity grounds.[45] Therefore, a final judgment was issued, satisfying the merits requirement for purposes of res judicata. The first element is met.

### 2.  The privity requirement is satisfied.

Defendants argue "Doe's prior lawsuit was against the identical parties in this action," satisfying the privity requirement.[46] The Court agrees. Plaintiff's own Complaint affirms "Doe sued Defendant UNTHSC and the official capacity defendants" in the "State Due Process Action."[47] Plaintiff counters that "although there was a judgment in the prior action rendered by a court of competent jurisdiction, the parties were not identical."[48] In support, Plaintiff states "Defendants Mire and Moorman were not Defendants in the State Due Process Action, and

---

[43] *See* Compl. ¶¶ 12–15, ECF No. 1; Defs.' App. 31, ECF No. 12-1; *Doe v. University of North Texas Health Science Center, et al.*, No. 20-0360 (Tex. July 23, 2021).
[44] *See* Compl. ¶¶ 12–15, ECF No. 1; Defs.' App. 31, ECF No. 12-1; *Doe v. University of North Texas Health Science Center, et al.*, No. 20-0360 (Tex. July 23, 2021).
[45] *See* Compl. ¶¶ 12–15, ECF No. 1; Defs.' App. 31, ECF No. 12-1; *Doe v. Univ. of N. Tex. Health Sci. Ctr.*, No. 02-19-00321-CV, 2020 WL 1646750 at *1 (Tex. App. Apr. 2, 2020), *review denied* (Apr. 16, 2021).
[46] Mot. 12, ECF No. 12.
[47] Compl. ¶ 13, ECF No. 1.
[48] Br. in Supp. of Pl.'s Resp. to Defs.' Mot. to Dismiss 9, ECF No. 17.

Defendant Filipetto was only sued in his official capacity as the office holder of the president of UNTHSC."[49] Thus, Filipetto "did not represent the same interests in the prior litigation as he does now, in his personal capacity," and the Individual Capacity Defendants, who are being sued in their personal capacities in this lawsuit, "are not identical or in privity to the parties in the prior litigation."[50]

Plaintiff is partially correct: "privity does not exist between a governmental entity and an employee later sued in his or her individual capacity." *Harmon*, 927 F.3d at 890–91. But privity generally does exist between a governmental entity and an employee later sued in his or her *official* capacity. *Warnock v. Pecos County*, 116 F.3d 776, 778 (5th Cir. 1997); *see also Conner v. Reinhard* 847 F.2d 384, 394–95 (7th Cir. 1988) (The Seventh Circuit explained that "a city official sued in his official capacity is generally in privity with the municipality," but that "[a] government official sued in his personal capacity, however, presents a different case."). In this case, privity exists between UNTHSC and the Official Capacity Defendants, but not between UNTHSC and the Individual Capacity Defendants. Thus, res judicata does not bar Plaintiff's individual-capacity claims against the Individual Capacity Defendants. But the second element is satisfied as it applies to Plaintiff's claims against Official Capacity Defendants.

### 3. The state-court case and this case are the same claim for res judicata purposes.

Plaintiff argues the third element is not satisfied, stating his "claims in the present suit are based on different events and conduct, which cannot be barred by res judicata."[51] Plaintiff contends

---

[49] *Id.* at 9–10.
[50] *Id.* at 10.
[51] *Id.* at 11.

10

that because this lawsuit's causes of action are based on information he learned after filing the State Due Process Action, the two actions are not sufficiently related.[52]

"In determining whether two actions are sufficiently related for purposes of res judicata and the compulsory counterclaim rule, Texas follows a transactional approach." *Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 907 (5th Cir. 2011). Under this test, "[a] prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). "The critical issue is whether the two actions are based on the same nucleus of operative facts." *Id.* (internal quotation marks omitted); *see also Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992) ("Under this approach, a judgment in an earlier suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." (citation omitted)).

In the state-court action, Plaintiff claimed UNTHSC violated his due process rights under Article I, section 9 of the Texas Constitution when he was dismissed.[53] In the present action, Plaintiff is suing Defendants under various theories of wrongdoing surrounding his dismissal. The events leading to each lawsuit—Plaintiff's leave of absence and subsequent dismissal—arise out of the same set of facts. Alleged newly discovered evidence is not sufficient to overcome the fact the lawsuits arose out of the same set of facts, because "[d]ifferent theories of recovery based on the same operative facts do not generate different causes of action." *Sims*, 894 F.3d at 645. Therefore, the third element of Texas's claim preclusion law is satisfied. Accordingly, the Court **DISMISSES** all claims against the Official Capacity Defendants.

---

[52] *Id.* at 11–12.
[53] Compl. ¶ 13, ECF No. 1.

Because Defendant's statute of limitations and sovereign immunity arguments are applicable only to the Official Capacity Defendants, the Court need not address these and turns to Plaintiff's claims against the Individual Capacity Defendants.

### B. ADA or Rehabilitation Act liability against the Individual Capacity Defendants

Plaintiff does not dispute that there is no avenue for liability against the Individual Capacity Defendants under the § 504 of the Rehabilitation Act of 1973, or the Americans with Disabilities Act of 2008.[54] Thus, the Court **DISMISSES** all claims brought under these acts.

### C. Qualified Immunity

In their Motion, the Individual Capacity Defendants argue Plaintiff "has not [pleaded] facts that overcome the Individual Capacity Defendants' entitlement to qualified immunity" regarding Plaintiff's § 1983 claims.[55] Plaintiff argues "[w]hile acting in their official capacities, Defendants engaged in conduct that any reasonable school official would know violates the law. Defendants are not entitled to qualified immunity, and Doe's claims under due process and equal protection should not be dismissed."[56] "The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal citation omitted).

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials

---

[54] Pl.'s Resp. Br. 26, ECF No. 17.
[55] Mot. 22, ECF No. 12.
[56] Pl.'s Resp. Br. 35, ECF No. 17.

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 815. This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier*, 533 U.S. at 201. If the record sets out or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes the violation of a constitutional or federal statutory right, the Court then turns to the second prong and asks whether the right was clearly established at the time of the government official's alleged misconduct. *Id.* When considering this second prong, the Court has determined that qualified immunity is appropriate when a defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008).

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson,* 555 U.S. at 236. Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, in light of the circumstances in the particular case at hand. *Id.*

13

### 1.   Violation of a Constitutional Right

The Court first considers whether Individual Capacity Defendants plausibly violated Plaintiff's constitutional rights and concludes Plaintiff has adequately pleaded facts establishing a plausible due process and equal protection violations.

### a.   Due Process

Plaintiff argues Defendants intentionally deprived him of his property interest in his education and medical degree without due process of law, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments.[57]

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). The Supreme Court and the Fifth Circuit generally assume the existence of some level of liberty or property interest in public higher education, although neither court has outlined the precise contours of that liberty or property interest. *Bd. of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 84–86 (1978); *see also Shaboon v. Duncan,* 252 F.3d 722, 730 (5th Cir. 2001); *Davis v. Mann,* 882 F.2d 967, 973 (5th Cir. 1989); *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 497 (N.D. Tex. 2015), *aff'd*, 668 F. App'x 88 (5th Cir. 2016).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews,* 424 U.S. at 333 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). But due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances"; instead, it is "flexible

---

[57] Compl. at ¶ 48, ECF No. 1.

and calls for such procedural protections as the particular situation demands." *Id.* at 334 (citations omitted).

In a public university setting, students are entitled to varying levels of procedural protection, contingent on whether they were dismissed for academic or disciplinary reasons. *Shah*, 129 F. Supp. 3d at 498. "When a student is dismissed for disciplinary reasons, the Fourteenth Amendment requires that 'the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.'" *Id.* at 497–98 (quoting *Goss v. Lopez,* 419 U.S. 565, 581 (1975)). Conversely, "academic dismissals 'call[] for far less stringent procedural requirements.'" *Id.* (quoting *Horowitz,* 435 U.S. at 86) (alteration original). In this case, there is no allegation Plaintiff violated a valid rule of conduct, as required for applying the heighted disciplinary requirements. *Horowitz,* 435 U.S. at 87–90; *Shaboon,* 252 F.3d at 730. Therefore, Plaintiff's dismissal was academic.

In cases of academic dismissals, "a student has received all the procedural due process required where '[t]he school fully informed [him] of the faculty's dissatisfaction with [his] clinical progress and the danger that this posed to timely graduation and continued enrollment.'" *Shah*, 129 F. Supp. 3d at 500 (quoting *Horowitz,* 435 U.S. at 85) (alterations original). Courts have interpreted this standard as requiring that students must "'be given some meaningful notice and an opportunity to respond.'" *Id.* at 498 (quoting *Davis*, 882 F.2d at 975). The process requires no more than giving the student "the opportunity to characterize his conduct and put it in proper context." *Burnett v. Coll. of the Mainland*, 994 F. Supp. 2d 823, 826 (S.D. Tex. 2014) (quoting *Horowitz,* 435 U.S. at 86). Due process does not require that a student be given a hearing before

he is dismissed for a failure to meet academic standards. *See Horowitz*, 435 U.S. at 90; *Davis*, 882 F.2d at 975.

Construing the facts pleaded in the light most favorable to Plaintiff, the Court finds Plaintiff has adequately pleaded facts to support a claim of a violation of due process. In the pleadings, Plaintiff states that Defendant Filipetto granted Plaintiff's LOA, knowing that Plaintiff would rely on the signed LOA and would not meet the additional standards set forth in the Filipetto Letter.[58] Further, Plaintiff states that Defendants Mire and Filipetto worked together to fabricate the Filipetto Letter with additional conditions they knew Plaintiff would not meet.[59] They then falsely convinced the SPC that Plaintiff had received notice via the Letter in November 2016, so that the SPC would dismiss him for not meeting the conditions set forth therein.[60] Plaintiff states that Defendant Moorman was aware of the Defendants Filipetto and Mire's actions and agreed to refrain from exercising his authority to intervene, thereby allowing Defendants Filipetto and Mire to have Plaintiff dismissed from the program.[61] Plaintiff finally states that he was dismissed without notice from the program and as he was not alerted to any earlier reenrollment date or other alleged noncompliance with the terms his LOA until after the SPC had already convened a hearing without him and dismissed him from the program.[62] Taking the allegations as true, Plaintiff has pleaded facts sufficient to show the Individual Capacity Defendants' actions plausibly caused Plaintiff to be dismissed without "meaningful notice and an opportunity to respond" in violation of due process. *Shah*, 129 F. Supp. 3d at 498 (quoting *Davis*, 882 F.2d at 975).

---

[58] *Id.* at ¶ 27.
[59] *Id.*
[60] *Id.*
[61] *Id.* at ¶ 28.
[62] *Id.* at ¶ 19.

### b.  Equal protection

Plaintiff argues that he is a member of a protected class because he is disabled or is regarded as disabled by virtue of Defendants' opinion that Plaintiff suffers from depression and bipolar disorder.[63] Plaintiff further argues that, because of his disability, he was treated differently than UNTHSC students who are not disabled, in violation of the Equal Protection Clause of the Fourteenth Amendment.[64]

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This essentially means that "all persons similarly situated should be treated alike." *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998). To successfully state a claim under the Equal Protection Clause, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)) (internal quotation marks omitted). But the Supreme Court has held that the disabled, including the mentally ill, are not a protected suspect class for purposes of equal protection analysis. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985). Therefore, any alleged discrimination against the disabled is reviewed under the rational basis test such that to withstand equal protection review, the alleged discriminatory action must be rationally related to a legitimate governmental purpose. *Id.* at 446.  Accordingly, to establish that his equal protection rights have been violated, Plaintiff must show that Defendants intentionally discriminated against him because of his status as a disabled individual and there exists no rational basis for Defendants treating Plaintiff differently than his similarly situated classmates without disabilities.

---

[63] *Id.* at ¶ 43.
[64] *Id.* at ¶ 42–46.

Construing the facts pleaded in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently pleaded facts to show a plausible claim under the Equal Protection Clause. In his pleadings, Plaintiff states that he is disabled or regarded as disabled by virtue of Defendants' opinion that he suffers from depression and bipolar disorder.[65] He pleads that, otherwise, he is similarly situated to other non-disabled students at UNTHSC, having completed three successful years in the program and having completed all academic requirements other than his fourth-year rotations.[66] He states that while other students were given multiple chances to re-take exams and courses, he was denied these opportunities and accommodations.[67] Plaintiff states that, because they viewed Plaintiff as disabled, Defendants went out of their way to prevent Plaintiff from completing his fourth-year rotations. They did this by placing the Filipetto Letter in his file, which purported to modify Plaintiff's LOA terms and which, Plaintiff argues, was falsely purported to have been submitted to him.[68] Ultimately, Plaintiff states that Defendants caused his dismissal from the program "*solely* because of his actual or perceived disability."[69] Since Individual Capacity Defendants' argue that Plaintiff has failed to properly plead his equal protection argument in the first instance, they advance no rational basis for the discrimination that Doe alleges.[70] Assuming the veracity of the pleadings, the Court finds that Plaintiff has pleaded facts sufficient to plausibly show that the Individual Capacity Defendants discriminated against Plaintiff solely due to his status as a disabled individual and that the discrimination is not rationally related to any legitimate government purpose.

---

[65] *Id.* at ¶ 43.
[66] *Id.* at ¶ 44.
[67] *Id.* at ¶ 45.
[68] *Id.*
[69] *Id.* (emphasis added).
[70] Mot. 21, ECF No. 12.

### 2. Clearly Established

Because Plaintiff has adequately pleaded constitutional violations, the Court turns to the second prong of qualified immunity. For the reasons discussed below, Plaintiff plead adequate facts to show that the Individual Capacity Defendants violated a clearly established right as to his due process claim. Plaintiff also plead adequate facts to establish his equal protection claim.

"[W]hen qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Joseph v. Bartlett*, 981 F.3d 319, 329 (5th Cir. 2020) (citation omitted). The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)) (alterations original). There are two ways to show that a law is clearly established. *Id.* Under the first approach, "the plaintiff may 'identify a case' or 'body of relevant case law' in which 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Id.* (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)) (alteration original). Under the second approach, "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id.* (quoting *D.C. v. Wesby*, 138 S. Ct. 577 (2018)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citation omitted).

### a. Due Process.

Assuming the veracity of the facts pleaded by Plaintiff, Plaintiff has successfully shown that the Individual Capacity Defendants violated a "clearly established" due process right. In the pleadings, Plaintiff points to *Goss v. Lopez*, 419 U.S. 565 (1975), and *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978), to define what due process requires.[71] *Goss* involved students suspended for disciplinary reasons, not academic reasons. *Goss*, 419 U.S. at 569–71. Therefore, the due process standard set forth by *Goss* is inapplicable in this case.

*Horowitz*, however, involved a plaintiff dismissed for academic reasons. *Horowitz,* 435 U.S. at 89–90. The Supreme Court in *Horowitz* emphasized that, in cases of academic dismissals, due process requirements are met where a university "fully informed [the student] of the faculty's dissatisfaction with her clinical progress and the danger that this posed to timely graduation and continued enrollment." *Id.* at 85. *Horowitz* made clear that some sort of notice is required before a student can be dismissed for academic reasons. *Id.* However, there is no hearing requirement in cases of academic dismissal. *Id.* at 88–89. Courts in subsequent cases have interpreted *Horowitz* to mean that due process requires schools to provide some notice or warning before dismissing a student for academic reasons. *See, e.g.*, *Shah*, 129 F.Supp. 3d at 500; *Shaboon*, 252 F.3d at 730; *Perez v. Tex. A & M Univ. at Corpus Christi*, 589 F. App'x 244, 249–50 (5th Cir. 2014).

Taking the facts pleaded by Plaintiff as true, Plaintiff has sufficiently shown that any reasonable person in the position of the Individual Capacity Defendants would know that their conduct violated Plaintiff's constitutional rights. Plaintiff states that he was dismissed without notice from the program and that he was not alerted to any earlier reenrollment date or other alleged noncompliance with the terms his LOA until after the SPC had already convened a hearing without

---

[71] Pl.'s Resp. Br. 24–25, ECF No. 17.

him and dismissed him from the program.[72] Based on existing precedent, a reasonable person in the place of the Individual Capacity Defendants would know that causing a student to be dismissed with no notice is in violation of the student's due process rights.

Therefore, Plaintiff has shown that Defendants violated a "clearly established" right to due process, the Individual Capacity Defendants are not entitled to qualified immunity as to Plaintiff's due process claim. Defendants' Motion to Dismiss as to Plaintiff's due process claims is **DENIED**.

### b. Equal Protection

Plaintiff has sufficiently shown that the Individual Capacity Defendants violated a "clearly established" right to equal protection. Plaintiff, in support of his equal protection claim, cites *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985).[73] In *Cleburne*, the Supreme Court stated that the Equal Protection Clause of the Fourteenth Amendment generally requires that similarly situated persons be treated alike. *Id.* at 439. The Supreme Court made clear, however, that the disabled are not a protected suspect class and that, therefore, discriminatory actions against the disabled warrant rational basis review. *Id.* at 446. Under rational basis review, any government action that treats a disabled person differently than a non-disabled person who is otherwise similarly situated must be rationally related to a legitimate government interest. *Id.* Under rational basis review, objectives such as a "bare desire to harm a politically unpopular group are not legitimate state interests." *Id.* at 446–47 (citation omitted). The Supreme Court in *Cleburne* invalidated the zoning ordinance at issue because it held that the ordinance rested on an irrational prejudice against the mentally disabled and the reasons for the ordinance supplied by the defendants failed to justify singling out the mentally disabled. *Id.* at 450. Thus, *Cleburne* clearly establishes that one cannot treat a disabled person differently than their similarly situated cohorts

---

[72] Compl. at ¶ 19.
[73] Pl.'s Resp. Br. 23, ECF No. 17.

based on an irrational prejudice against the disabled. While rational basis review is a low bar, the standard does demand at least some explanation of allegedly discriminatory conduct.

Taking Plaintiff's claims as true, the sole reason Defendants dismissed him from the program was due to his status as a disabled individual.[74] Plaintiff states he was otherwise similarly situated to other students at UNTHSC who are not disabled.[75] Plaintiff states that the Filipetto Letter was never submitted to him but, rather, was drafted by Defendants in order to convince the school there was reason to dismiss Plaintiff.[76] Since Plaintiff has pleaded facts that, if true, preclude an innocent explanation of Defendants' conduct, Plaintiff has pleaded facts sufficient to show that his dismissal was based on an irrational prejudice against the disabled. This conduct violates the clearly established law at the time, and no reasonable officer could believe it was proper.

Therefore, Defendants' Motion to Dismiss Plaintiff's equal protection claim is **DENIED**.

### D. Fraud[77]

And lastly, Defendants argue Plaintiff's fraud claims against Defendants Filipetto and Mire, in their individual capacities, should be dismissed.[78] In their Motion to Dismiss, Defendants argue that immunity bars Plaintiff's common law fraud claims and, even if Plaintiff could bring a fraud claim against them, Plaintiff's fraud claim does not meet the requisite pleading standards.[79] Plaintiff, in his pleadings, argues Defendants Filipetto and Mire are not entitled to immunity because his fraud claim is against them in their individual capacity.[80] He further argues that the

---

[74] Compl. at ¶ 45, ECF No. 1.
[75] *Id.* at ¶ 44.
[76] *Id.* at ¶ 45.
[77] Plaintiff only asserts his fraud claim against Defendants Filipetto and Mire, not Defendant Moorman. Compl. at ¶ 59, ECF No. 1.
[78] Mot. 23–24, ECF No. 12.
[79] *Id.* at 24–25.
[80] Pl.'s Resp. Br. 27, ECF No. 17.

factual allegations supporting his fraud claim against Filipetto and Mire meet Rule 9(b)'s heightened pleading standard.[81]

Assessing whether Defendants Filipetto and Mire are entitled to immunity, Defendants argue they are entitled to immunity under the compulsory language of the Texas Tort Claims Act.[82] Plaintiff argues that he asserted his fraud claim against Defendants Filipetto and Mire in their individual capacities and not against UNTHSC or the Official Capacity Defendants.[83] He argues that Defendants Filipetto and Mire, in their individual capacities, do not have immunity from suit for the intentional tort of fraud.[84]

Section 101.106(f) of the TTCA provides that "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code § 101.106(f). Under such circumstances, "[o]n the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." *Id.* "[A]n act may be within the scope of the employee's duties even if the specific act that forms the basis of the civil suit was wrongly or negligently performed, so long as the action was one related to the performance of his job." *Maldonado v. City of Pearsall*, 977 F. Supp. 2d 646, 652 (W.D. Tex. 2013) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)).

---

[81] *Id.* at 27–28.
[82] Mot. 23–24, ECF No. 12.
[83] Pl.'s Resp. Br. 27, ECF No. 17.
[84] *Id.*

In this case, the alleged fraudulent acts included Filipetto submitting the signed LOA to Plaintiff, Filipetto drafting the Letter to "paper" Plaintiff's file, and Filipetto and Mire agreeing to use the Letter to convince the UNTHSC committee to dismiss Plaintiff.[85] Defendant Filipetto, at the time of the alleged fraud, was the Assistance Vice Dean for TCOM.[86] Defendant Mire, at the time of the alleged fraud, was the Executive Director of Student & Academic Success for UNTHSC's Division of Student & Academic Affairs Executive Team.[87] These positions, by their nature, involve making executive decisions about student academic success and continued enrollment. The acts alleged by Plaintiff, even if wrongly performed, were related to Defendants Filipetto and Mire's performance of their roles. Thus, the alleged conduct fell within the scope of Filipetto and Mire's employment. Therefore, Defendants Filipetto and Mire, sued in their individual capacities, are entitled to immunity. The Court need not assess whether Plaintiff's allegations meet the heightened Rule 9(b) pleading standard. Plaintiff's fraud claim is hereby **DISMISSED**.

## IV.        CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion to Dismiss. Plaintiff's claims against the Official Capacity Defendants are dismissed. Plaintiff's fraud claims are dismissed. Plaintiff's claims under § 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act are dismissed. The sole remaining claims before the Court are Plaintiff's due process claim and equal protection claim against the Individual Capacity Defendants.

**SO ORDERED** this **10th day** of **September, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[85] Compl. at ¶ 58, ECF No. 1.
[86] *Id.* at ¶ 3.
[87] *Id.* at ¶ 4.