IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE § | |
| § | |
|    Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:21-cv-00658-O |
| § | |
| UNIVERSITY OF NORTH TEXAS § | |
| HEALTH SCIENCE CENTER, et al., § | |
| § | |
|    Defendants. § | |

## ORDER AND OPINION

Before the Court are Defendants Drs. Frank Filipetto, Thomas Moorman, and Emily Mire in their individual capacities' (collectively, the "Individual Capacity Defendants") Motion for Summary Judgment (ECF No. 55), filed May 1, 2023; Plaintiff's Response (ECF No. 60), filed May 22, 2023; and the Individual Capacity Defendants' Reply (ECF No. 65), filed June 5, 2023. For the reasons contained herein, the Motion is **GRANTED**.

### I.    Factual Background

This lawsuit arose out of Plaintiff John Does' dismissal from the University of North Texas Health Science Center ("UNTHSC"). Plaintiff began medical school in the fall of 2014 at Texas College of Osteopathic Medicine, part of UNTHSC, and completed the first three years of medical school. But during Plaintiff's fourth year, Plaintiff requested a one-year medical leave of absence.

The request was submitted to Defendant Dr. Frank Filipetto, serving as Assistant Vice Dean, as well as to TCOM's Student Performance Committee ("SPC"). The SPC, at its November 1, 2016 meeting, granted Plaintiff's request for leave. On November 3, 2016, Filipetto met with Plaintiff and allegedly hand-delivered a letter ("the Filipetto Letter") to Plaintiff detailing the terms and conditions of the SPC's decision. The Letter stated that in order for Plaintiff to re-enroll at the end of his leave of absence, by May 1, 2017, Plaintiff needed to: (1) notify the Registrar's Office

1

and the Dean in writing of his intent to return with the Class of 2018; (2) submit written documentation from a licensed healthcare provider that he is fit to resume the degree program; and (3) show proof that he has successfully passed COMPLEX 2CE.[1] Plaintiff strongly avers that he was never given the Filipetto Letter.

On November 1, 2016, Plaintiff filled out a "Request for Leave of Absence" form and filled in "July 2017" as the date in which he planned to return to the academic program.[2] Plaintiff signed this form, and it was counter-signed by Dr. Filipetto. Also on this form, Plaintiff provided his personal email address through which the UNTHSC registrar emailed him to confirm the acceptance of the leave of absence and transmit the countersigned form to Plaintiff.

Plaintiff did not comply with the May 1, 2017 deadlines listed in the disputed Filipetto Letter. On July 10, 2017, Dr. Filipetto emailed Plaintiff at his student email address ("the July 10 Notice"), informing him that because he failed to meet the May 1, 2017 deadlines, action would be taken at the next SPC meeting.[3] Plaintiff did not respond to the July 10 Notice. On July 17, 2017, the SPC emailed Plaintiff at his student email address ("the July 17 Notice"), informing him that he was scheduled to appear at a July 25, 2017 SPC meeting.[4] In the July 17 Notice, Plaintiff was encouraged to submit a written statement "outlining any issues that led to this failure [to comply with the deadlines] and what changes [Plaintiff] plan[ned] to make to ensure [his] academic success in the future."[5] Plaintiff did not respond to the July 17 Notice. Plaintiff also failed to submit

---

[1] Defs. Appx. 104, ECF No. 56-1.
[2] Plaintiff states that the July 2017 deadline was his deadline to contact the school to re-enroll. *See* Pl. Resp. 6, ECF No. 60. However, looking at the form itself, the form lists July 2017 as the date Plaintiff "intend[s] to return and re-enroll in courses." Pl. Appx. A-38, ECF No. 61. The form does not state when Plaintiff was required to contact the school to re-enroll. *See id.*
[3] Defs. Appx. 124, ECF No. 56-1.
[4] *Id.* at 151.
[5] *Id.*

2

a written statement and failed to attend the SPC meeting.[6] At the July 25, 2017 SPC meeting, the SPC unanimously voted to dismiss Plaintiff from the medical school program.[7]

Plaintiff, who states he had not been checking his school email account, states he found out about his dismissal a day or two after the SPC meeting, when Defendant Dr. Emily Mire called him to let him know.[8] Dr. Mire is an executive director on UNTHSC's Student & Academic Affairs Executive Team.

After the SPC made its decision, Defendant Dr. Thomas Moorman, former UNTHSC Vice President for Student Affairs, who was not on the SPC and was not ultimately involved in the dismissal action, met with Plaintiff to personally hand him the July 25, 2017 letter ("the July 25 Notice"), which informed Plaintiff of his formal dismissal.[9] The July 25 Notice informed Plaintiff that he had the opportunity to appeal the SPC's decision within five business days.[10]

Plaintiff submitted a written appeal to Dr. Filipetto on July 31, 2017.[11] Dr. Filipetto met with Plaintiff on August 3, 2017 to discuss his appeal in person. Dr. Filipetto sustained the recommendation of dismissal from the SPC. Dr. Filipetto then provided Plaintiff a final decision letter sustaining the dismissal, dated August 3, 2017.[12]

Plaintiff filed a state due process claim against UNTHSC and Drs. Filipetto, Moorman, and Mire in their official capacities for allegedly depriving Plaintiff of due process. The 153rd Judicial District Court dismissed the claim, the Second District Court of Appeals affirmed, and the Supreme Court of Texas denied Plaintiff's petition for review and petition for rehearing.

---

[6] *Id.* at 127.
[7] *Id.*
[8] *Id.* at 45.
[9] *Id.* at 152. Neither Party's briefing lists the exact date Plaintiff met with Dr. Moorman. Plaintiff submitted his written appeal on July 31, 2017, so the Court concludes this meeting with Dr. Moorman took place sometime between July 25 and July 31, 2017.
[10] *Id.*
[11] *Id.* at 132–33.
[12] *Id.* at 138.

Plaintiff filed the present action on May 14, 2021. Plaintiff brought claims UNTHSC, Drs. Filipetto, Moorman, and Mire in their official capacities, and Drs. Filipetto, Moorman, and Mire in their individual capacities ("the Individual Capacity Defendants"). Defendants filed a motion to dismiss on September 7, 2021.[13] On September 10, 2022, the Court granted in part Defendants' motion.[14] At present, the sole remaining claims are Plaintiff's due process claim and his equal protection claim against the Individual Capacity Defendants.

The Individual Capacity Defendants filed their Motion for Summary Judgment (ECF No. 55) on May 1, 2023. Plaintiff filed his Response (ECF No. 60) on May 22, 2023. The Individual Capacity Defendants filed their Reply (ECF No. 65) on June 5, 2023. The Motion is now ripe for the Court's review.

**II.     Legal Standard**

Summary judgment is appropriate only where the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the Court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

---

[13] *See* ECF No. 12.
[14] Court Order, ECF No. 35.

The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

The opposing party must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Therefore, where the opposing party fails to respond to a motion for summary judgment, the court may "accept[] as undisputed the facts so listed in support of [the] motion." *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The Court may grant the motion if the materials submitted make a *prima facie* showing that the moving party is entitled to judgment. *Id.*

### III. Analysis

#### A. Qualified Immunity

The Individual Capacity Defendants, in their Motion, contend that they are entitled to qualified immunity against Plaintiff's claims.[15]

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

---

[15] Defs. Brief 6, ECF No. 56.

5

harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 815. This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Saucier*, 533 U.S. at 201. If the record sets out or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes the violation of a constitutional or federal statutory right, the Court then turns to the second prong and asks whether the right was clearly established at the time of the government official's alleged misconduct. *Id.* When considering this second prong, the Court has determined that qualified immunity is appropriate when a defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008).

The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson,* 555 U.S. at 236. Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first, in light of the circumstances in the particular case at hand. *Id.*

### B. Due Process Claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Shah v. Univ. of Texas Sw. Med. Sch.*, 129 F. Supp. 3d 480, 497

6

(N.D. Tex. 2015), *aff'd*, 668 F. App'x 88 (5th Cir. 2016) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). In *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78 (1978), the Supreme Court assumed, without deciding, that students have some protected interest in public higher education, and therefore, students are entitled to due process before being deprived public higher education. *Id.* at 84–86.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner." *Shah*, 129 F. Supp. 3d at 497 (quoting *Matthews*, 424 U.S. at 333). When a public university dismisses a student on academic grounds, as opposed to disciplinary grounds, there are "far less stringent procedural requirements" to satisfy due process. *Horowitz*, 435 U.S. at 86. The Supreme Court in *Horowitz* emphasized that, in cases of academic dismissals, due process requirements are met where a university "fully inform[s] [the student] of the faculty's dissatisfaction with her clinical progress and the danger that this pose[s] to timely graduation and continued enrollment." *Id.* at 85. *Horowitz* made clear that some sort of notice is required before a student can be dismissed for academic reasons. *Id.* However, there is no hearing requirement in cases of academic dismissal. *Id.* at 88–89. Courts have interpreted this standard as requiring that students must be given some meaningful notice and an opportunity to respond. *See Shah*, 129 F. Supp. 3d at 498–500; *Davis v. Mann*, 882 F.2d 967, 975–76 (5th Cir. 1989); *Perez v. Tex. A & M Univ. at Corpus Christi*, 589 F. App'x 244, 249–50 (5th Cir. 2014).

In this case, the Individual Capacity Defendants contend that Plaintiff received the due process to which he was entitled.[16] They highlight that Plaintiff does not dispute he was given three separate notices regarding his potential academic dismissal (the July 10 Notice, the July 17 Notice, and the July 25 Notice) and that Plaintiff was given an opportunity to respond through his

---

[16] Defs. Brief 13, ECF No. 56.

subsequent appeal.[17] Plaintiff responds that the three notices were sent to his student email address, as opposed to his personal email address he listed on the Leave of Absence form.[18] He notes that during his leave of absence, he stopped checking his student email account.[19] He further contends that the notices were sent after the deadlines for reenrollment had passed, and therefore, they could not provide him meaningful notice.[20]

The Court finds that the Individual Capacity Defendants did not violate Plaintiff's right to due process. Plaintiff does not dispute that he was sent three separate notices prior to his eventual dismissal. Plaintiff was given an opportunity to appear before the SPC to be head before it made its final decision regarding Plaintiff's enrollment.[21] He was encouraged to submit a written statement prior to the SPC meeting detailing any issues Plaintiff faced with meeting the re-enrollment deadlines and what changes he planned to make to ensure his future academic success.[22] Plaintiff failed to appear for the meeting or to submit a written statement.[23] Once, the SPC had made its decision to dismiss Plaintiff from the program, he was given an opportunity to appeal. Such process has been upheld as constitutional by Fifth Circuit precedent. *See Perez*, 589 F. App'x at 250; *Shaboon v. Duncan*, 252 F.3d 722, 730–32 (5th Cir. 2001); *Wheeler v. Miller*, 168 F.3d 241, 248–49 (5th Cir. 1999); *Davis v. Mann*, 882 F.2d at 975 (5th Cir. 1989).

While Plaintiff contends that the three notices were sent after the May 1, 2017 deadline had passed, thereby not affording him the proper notice, the Court finds that the notices properly informed Plaintiff of the "faculty's dissatisfactions" and informed Plaintiff of the next steps in the process and how he could be heard on the matter. Importantly, at the time of the July 10 and July

---

[17] *Id.* at 14.
[18] Pl. Resp. 20, ECF No. 60.
[19] *Id.*
[20] *Id.*
[21] Defs. Brief 15, ECF No. 56 (quoting Defs. Appx. 151, ECF No. 56-1).
[22] *Id.* (quoting Defs. Appx. 151, ECF No. 56-1).
[23] *Id.*

8

17 Notices, Plaintiff had not yet been dismissed from the academic program – there was still time to potentially remediate the situation. As to Plaintiff's argument that the notices were sent to his student email address versus his personal email address, Plaintiff provided no evidence that he informed the Individual Capacity Defendants that he stopped checking his student email address. In fact, Plaintiff testified during his deposition that he was still checking his student email address during his leave of absence "to make sure to get [his] health insurance."[24] As Plaintiff was still intending to return to the school, the Court finds there is no evidence to suggest the Individual Capacity Defendants knew or should have known that sending the notices to Plaintiff's student email address would not afford him proper notice. At the very least, the Court finds the Individual Capacity Defendants' actions were not in violation of clearly established law.

Therefore, as the Court finds that Plaintiff received the due process to which he was entitled, his due process claim fails, and summary judgment is **GRANTED**. Alternatively, as Court finds the Individual Capacity Defendants did not violate Plaintiff's due process rights, or at the very least, they did not violate clearly established law, the Individual Capacity Defendants are entitled to qualified immunity and summary judgment is **GRANTED**.

### C.  Equal Protection Claim

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This essentially means that "all persons similarly situated should be treated alike." *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998). To successfully state a claim under the Equal Protection Clause, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)) (internal quotation marks

---

[24] Defs. App. 45, ECF No. 56-1.

omitted). "Individuals are similarly situated when they are 'in all relevant aspects alike,'" other than their membership in the protected class. *Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, No. EP-20-CV-170-DB, 2022 WL 4923349, at *4 (W.D. Tex. Oct. 3, 2022) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). But the Supreme Court has held that the disabled, including the mentally ill, are not a protected suspect class for purposes of equal protection analysis. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985). Therefore, any alleged discrimination against the disabled is reviewed under the rational basis test such that to withstand equal protection review, the alleged discriminatory action must be rationally related to a legitimate governmental purpose. *Id.* at 446. Accordingly, for Plaintiff to succeed on his equal protection claim, he must provide evidence that (1) the Individual Capacity Defendants treated him differently than similarly situated non-disabled students, and (2) the difference in treatment was not rationally related to a legitimate governmental purpose.

The Individual Capacity Defendants contend that Plaintiff's equal protection claim must fail as Plaintiff has not and cannot identify any other similarly situation non-disabled students who requested a medical leave of absence and then failed to satisfy the conditions of their return to the academic program.[25] They further contend that Plaintiff cannot identify any similarly situated non-disabled students who ignored multiple notices sent to their school email accounts and failed to attend an SPC meeting.[26] Furthermore, the Individual Capacity Defendants aver that they had a rational basis for their actions – he was dismissed after failing to meet the conditions of his return, failing to respond to Dr. Filipetto's email notices, not appearing for the SPC meeting, and not providing a written statement to explain himself.[27]

---

[25] Defs. Brief 16–17, ECF No. 56.
[26] *Id.* at 17.
[27] *Id.*

Plaintiff counters that he was treated differently than similarly situated non-disabled students because Dr. Filipetto allegedly "created the Filipetto Letter and withheld it from [Plaintiff] to cause his dismissal."[28] Plaintiff further highlights testimony wherein witnesses stated that they would have emailed a document like the Filipetto Letter, instead of hand-delivering it.[29] Plaintiff also contends he was treated differently from other students because the Individual Capacity Defendants isolated Plaintiff from the medical school, assigning him a faculty advisor who was away on leave.[30] He states he has personal knowledge of other students who were granted multiple extensions of deadlines based on non-disability personal reasons.[31]

Plaintiff concludes that the Individual Capacity Defendants acted together to withhold information from Plaintiff so that he would be dismissed from the program due to his status as a disabled person.[32] He emphasizes that when he met with Dr. Filipetto to discuss his appeal, Dr. Filipetto communicated that he was upholding the dismissal based on communications with Dr. Mire.[33] He states that the communications between Drs. Filipetto and Mire "would have only" been about Plaintiff's mental health as Dr. Mire believed Plaintiff had bipolar disorder – which Plaintiff avers he does not have and never told anyone at the school that he has.[34] Plaintiff, however, provides no actual evidence of the contents of the communications between Drs. Mire and Filipetto.

The Court finds that Plaintiff fails to provide evidence that similarly situated non-disabled students were treated differently than him. He lists various circumstances about his own situation (e.g., the Filipetto Letter, if delivered, was hand-delivered instead of emailed; he was given a

---

[28] Pl. Resp. 21, ECF No. 60.
[29] *Id.*
[30] *Id.* at 22.
[31] *Id.*
[32] *Id.* at 23–24.
[33] Id. at 23.
[34] *Id.* at 4, 23–24; Pl. Appx. B-45 283–84, ECF No. 62.

faculty advisor who was on leave, etc.), but Plaintiff fails to provide evidence that similarly situated non-disabled students who (1) were granted a medical leave of absence; (2) failed to satisfy the conditions of their return to the academic program;[35] (3) ignored multiple notices about this failure sent to their school email address; and (4) failed to appear for a meeting before the SPC or to provide a written statement to explain the situation, were ultimately treated any differently by the Individual Capacity Defendants.

As Plaintiff fails to provide evidence to suggest that he was treated in a manner differently from others similarly situated, his equal protection claim fails, and summary judgment as to the equal protection claim is hereby **GRANTED** in favor of the Individual Capacity Defendants. Alternatively, as the Individual Capacity Defendants did not violate Plaintiff's rights under the Equal Protection Clause, or at the very least, they did not violate clearly established law, the Individual Capacity Defendants are entitled to qualified immunity, and their Motion for Summary Judgment is **GRANTED**.

### IV. Conclusion

Accordingly, the Individual Capacity Defendants' Motion for Summary Judgment is hereby **GRANTED** as to both Plaintiff's due process claim and his equal protection claim. Final Judgment shall issue separately.

**SO ORDERED** on this **23rd day** of **June, 2023.**

_\[signature: Reed O'Connor\]_
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[35] The Court understands that Plaintiff disputes he was ever given the Filipetto Letter. However, Plaintiff still fails to provide evidence that he was treated differently by the Individual Capacity Defendants than similarly situated non-disabled students who also (1) were granted a medical leave of absence, (2) ignored multiple notices sent to their school email addresses, and (3) failed to appear for an SPC meeting and failed to provide a written statement on their own behalf.