IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **JOHN DOE,**           **Plaintiff** <br><br> **v.** <br><br> **UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER, DR. FRANK FILIPETTO,** *in both his official capacity and his individual/personal capacity*, **DR. EMILY MIRE,** *in both her official capacity and her individual/personal capacity*, **and DR. THOMAS MOORMAN,** *in both his official capacity and his individual/personal capacity.* <br><br> **Defendants** | **CIVIL CASE NO. 4:21-CV-00658-O** |

**PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT AND MEMORANDUM AND BRIEF IN SUPPORT**

**TO THE HONORABLE JUDGE O'CONNOR:**

Plaintiff John Doe ("Doe" or "Plaintiff") files this Motion to Alter or Amend the Judgment and Memorandum and Brief in Support, and Plaintiff would respectfully show the following:

### I. INTRODUCTION

1. The Court should amend the Judgment because Defendants' Motion for Summary Judgment focused on the wrong aspects of the timeline of events and, therefore, Defendants entirely missed the point of this lawsuit and misled the Court. As has been made clear from Doe's Original Petition onward, Doe complains of Filipetto, Mire, and Moorman purposefully misleading Doe and the SPC by creating and withholding the Filipetto letter, ultimately causing the SPC to dismiss Doe. The later notice of the SPC meeting that Defendants claim Doe received

is not relevant to these claims because Doe was never made aware of the additional requirements that gave rise to the SPC meeting in the first place.

2. Even to the extent the notice carried relevance to Doe's claims, there still exists a genuine issue of material fact regarding the method of whether Doe received "meaningful notice" because Defendants were aware that Doe was using his personal email address while he was on leave. This was made clear on Doe's Leave of Absence form, which was countersigned by Filipetto himself. And while he was on leave, Doe received multiple emails at his personal email address from UNTHSC; *see* Dkt. 61 at 116 (showing UNTHSC acceptance of Doe's personal Hotmail email address for communication during medical leave of absence); Dkt. 62 at 1082–1086 (Doe Deposition at 202–206); *see also* Ex. B–C; which led Doe to believe that he could expect to be contacted by UNTHSC at his personal email address. There is a genuine issue of material fact regarding each of the issues complained of in Defendants' Motion for Summary Judgment, and Defendants have failed to establish that they are entitled to judgment as a matter of law. Because there are genuine disputed issues of material fact, these issues must be decided by the jury at trial.

3. Additionally, the unfounded evidentiary issues and complaints should have been overruled. The Court should also consider evidence that Doe later acquired even though it should have been produced by Defendants in discovery. This evidence further supports Doe's claims and the fact that there are genuine issue of material fact in this case. Therefore, this Court should reconsider its order granting Defendants' Motion for Summary Judgment, vacate the order, and allow the claims to proceed to trial.

## II. ARGUMENT AND AUTHORITIES

4. "A motion asking the court to reconsider a prior ruling is evaluated either as a motion to 'alter or amend a judgment' under Rule 59(e) or as a motion for 'relief from a final

judgment, order, or proceeding' under Rule 60(b)." *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). "If the motion was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59 . . . ." *Id.* Here, because the Motion to Reconsider is filed within the 28-day timeframe, it is evaluated under Rule 59(e).

5. "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." *Id.* In this case, the Court should modify the judgment to correct a manifest error of law or fact and because Doe presents newly discovered evidence that was previously unavailable.

**A.     The Court should amend the judgment on Defendants' Motion for Summary Judgment because it contains manifest errors of law and fact.**

6. This Court should vacate its Order granting summary judgment in favor of Defendants because there are genuine issues of material fact regarding each issue raised in Defendants' Motion for Summary Judgment, leading to manifest errors of law and fact in the order. Specifically, Defendants distracted from the key issues in the case, there are specific issues of fact that were not resolved, Defendants made misleading and unfounded complaints regarding Doe's Response, and Defendants' evidentiary objections were groundless.

   **i.     Defendants misconstrued the facts at issue in this case.**

7. This Court had previously ruled on which of Doe's pleaded facts support his claims. In its Memorandum Opinion and Order on Defendants' Motion to Dismiss, this Court provided a framework of which of Doe's pleaded facts support his due process claim:

> Plaintiff has adequately pleaded facts to support a claim of a violation of due process. In the pleadings, Plaintiff states that Defendant Filipetto **granted Plaintiff's LOA**, **knowing that Plaintiff would rely on the signed LOA and would not meet the additional standards set forth in the Filipetto Letter.** Further, Plaintiff states that Defendants Mire and Filipetto **worked together to**

> **fabricate the Filipetto Letter with additional conditions they knew Plaintiff would not meet.** They then **falsely convinced the SPC that Plaintiff had received notice via the Letter in November 2016, so that the SPC would dismiss him for not meeting the conditions set forth therein.** Plaintiff states that Defendant Moorman was aware of the Defendants Filipetto and Mire's actions and **agreed to refrain from exercising his authority to intervene**, thereby allowing Defendants Filipetto and Mire to have Plaintiff dismissed from the program. Plaintiff finally states that he was dismissed without notice from the program and as he was not alerted to any earlier reenrollment date or other alleged noncompliance with the terms his LOA until after the SPC had already convened a hearing without him and dismissed him from the program. Taking the allegations as true, Plaintiff has pleaded facts sufficient to show the Individual Capacity Defendants' actions plausibly caused Plaintiff to be dismissed without "meaningful notice and an opportunity to respond" in violation of due process. Shah, 129 F. Supp. 3d at 498 (quoting Davis, 882 F.2d at 975).

Dkt. 35, p. 16. However, Defendants failed to address these facts that the Court had already identified as being relevant to Doe's due process claims. To distract from these issues, Defendants claimed that the case hinged on whether the July 2017 emails provided notice to Doe. But as the Court's own previous order indicated, the following are additional fact issues that give rise to Doe's due process claim and should have been considered:

    a.    Whether the letter modifying the terms of Doe's medical leave of absence was intentionally withheld from him;[1]

    b.    Whether Filipetto intentionally withheld notice of the material terms and conditions from Doe's medical leave of absence;

    c.    Whether Defendants falsely convinced the SPC that Doe had received notice of the additional terms and conditions of his leave of absence in the November 2016 letter;

    d.    Whether Filipetto was the person who initiated Doe's dismissal;

---

[1] If that letter was withheld, as the evidence indicates, then the 2017 emails sent to Doe's school email account while he was on a medical leave of absence after Defendants had already determined to dismiss him failed to inform him of the material terms of his medical leave of absence or provide him with any meaningful opportunity to respond to the decision to dismiss him. Filipetto was the sole decisionmaker on appeal, so his involvement did not cure the violation.

  e. Whether Filipetto was the person who ultimately denied Doe's appeal; and

  f. Whether Moorman was aware of Mire and Filipetto's actions and deliberately declined exercise his authority to intervene or initiate an investigation.

 8. Additionally, for the equal protection claim, Defendants focused on the conduct of the SPC instead of the actual actions complained of. As the Court indicated in its previous Order, the pleaded facts support Doe's equal protection claims:

> [T]he Court finds that Plaintiff has sufficiently pleaded facts to show a plausible claim under the Equal Protection Clause. . . . Plaintiff states that, because they viewed Plaintiff as disabled, **Defendants went out of their way to prevent Plaintiff from completing his fourth-year rotations**. They did this by **placing the Filipetto Letter in his file, which purported to modify Plaintiff's LOA terms** and which, Plaintiff argues, was **falsely purported to have been submitted to him.** Ultimately, Plaintiff states that **Defendants caused his dismissal from the program** "solely because of his actual or perceived disability."

Dkt. 35, p. 18. As the Court previously, recognized, the treatment by the SPC is not the issue here; rather, the conduct giving rise to Doe's equal protection claims is what Filipetto, Mire, and Moorman did to **cause** his dismissal from the program on the sole basis of his perceived disability by misleading the SPC to take action against Doe. Despite Defendants' claims otherwise, the question of whether the SPC itself treated Doe differently from students that were not regarded as disabled when it dismissed him was not relevant to the equal protection claims. Instead, the following issues of fact should have been considered:

  a. Whether Mire and Filipetto prevented Doe from re-enrolling in the program due to their belief that he suffered from depression or bipolar disorder;

  b. Whether the letter modifying the terms of Doe's medical leave of absence was intentionally withheld from him;

  c. Whether Mire convinced Filipetto to dismiss Doe because of Mire's belief that Doe was suffering from mental disabilities including depression or bipolar disorder;

    d. Whether Moorman deliberately declined to exercise his authority to intervene or initiate an investigation based on his knowledge that Filipetto had caused Doe's dismissal by depriving Doe of notice because of his status as a disabled person; and

    e. Whether Defendants ordinarily called and reached out to other students to assist students with meeting school requirements while on medical leave of absence and treated Doe in a different manner due to their belief that Doe was disabled. Ex. A.

9. Because there is substantial evidence giving rise to genuine issues of material fact with regard to Doe's claims, Defendants' Motion for Summary Judgment should have been denied.

    **ii. Defendants' Motion for Summary Judgment should have been denied because there were fact issues that should have been considered regarding the July 2017 emails.**

10. Even if Doe's due process claims hinged on the July 2017 notices, those notices failed to provide "an opportunity to be heard at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (specifying that this is the fundamental requirement of due process). The following disputed issues of material fact issues were not, but should have been, considered:

    a. Whether Doe provided his personal email for medical school administrators to use while he was on medical leave of absence;

    b. Whether UNTHSC had actually used Doe's personal email account to communicate with him after granting his leave of absence, resulting in Doe reasonably relying on UNTHSC to do the same with future communications;

    c. Whether Doe was required to check his school email account while on medical leave of absence when the leave of absence form contained a space specifically to

        provide a personal email address for use during a medical leave of absence, and Filipetto countersigned the form unaltered; and

    d. Whether the July 2017 emails sent to Doe's school email account gave him sufficient notice of the terms and conditions Defendants alleged he failed to satisfy.

    11. There is a genuine issue of fact regarding whether Doe received sufficient notice and a meaningful opportunity to respond. Doe did not receive notice because the 2017 emails were sent to Doe's school email account, despite the fact that Doe was not enrolled in classes at the time and had provided his personal email address as the appropriate means to contact him while on medical leave. In fact, Mire's own notes indicate that Doe was not aware of the SPC meeting. Dkt. 61 at 87 (Mire note at 7.25.17). The mere facts that the Leave of Absence form contained a space specifically to provide an email address, without specifying that it needed to be a school-provided email address, and that this form was countersigned unaltered, shows that UNTHSC assented to using this email address to contact Doe. *See* Dkt. 61 at 116 (displaying Doe's personal Hotmail email address); Appx. B-44 at 134 (Filipetto acknowledging, "It says . . . [REDACTED STUDENT'S NAME]@hotmail.com."). And in fact, UNTHSC contacted Doe multiple times using his personal email address while he was on leave. Ex. B-D (displaying Doe's personal Hotmail email address, which is consistent with Doe's testimony at Dkt. 62 at 1082–1086). At the very least, this creates an issue of fact to be considered by the jury. However, even if the manner of sending the notice was sufficient, it still did not provide the opportunity to be heard in a ***meaningful manner*** because the notices failed to specify what conditions had not been met to trigger the hearing in the first place. Even if Doe had been made aware of the hearing in time to prepare a meaningful response, he would not have had sufficient information to do so.

12. Thus, Doe never received notice or meaningful opportunity to respond, particularly when Defendant Filipetto was same the individual who withheld the material terms and conditions from Doe, was the same individual who initiated the Student Performance Committee proceedings to dismiss Doe without providing him actual notice and was the same individual who denied Doe's internal appeal. Defendant Filipetto had complete control of the process and intentionally dismissed Doe from school by depriving him the ordinary process given to other students. And Doe was not "fully informed" about how he did not meet the terms of his leave because these terms were withheld from him when he did not receive the letter initially setting out the terms and was still not informed about the terms in the July 2017 notices, and as a result, he was not informed about the danger that failing to meet these terms posed to his continued enrollment. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978) (finding that procedural due process was satisfied when a school *did* fully inform a student of the faculty's dissatisfaction with her progress and the danger that it posed to timely graduation and continued enrollment). Moreover, on July 25, 2023, Filipetto testified that he became the dean on the same day that he dismissed Doe after initiating his dismissal proceeding with the Student Performance Committee. Dkt. 62 at 48, 116. Filipetto provided the SPC with the letter that he withheld from Doe and used to paper Doe's file so that Doe would not be aware of material terms of his medical leave of absence and the SPC would believe he failed conditions that Doe never had notice of, Filipetto timed his initiation of the dismissal so that he would then be positioned to be the sole decisionmaker for the "appeal" by Doe—hence Filipetto made himself the judge, jury, and executioner by initiating and timing the process to dismiss Doe so that Filipetto would have personal authority over it from beginning to end.

13.     Defendants asserted that Doe's testimony should be discounted because it is self-serving. However, "self-serving evidence must only comport with the standard requirements of Federal Rule of Civil Procedure 56." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). When self-serving summary judgment evidence is "made on personal knowledge, set out [particularized] facts that would be admissible in evidence, and show[s] that the [witness] is competent to testify on the matters stated[,]" it is "sufficient to create a genuine issue of material fact." *Id.* Defendants also claimed that Doe's appeal letter's failure to mention the Filipetto letter is somehow evidence that he was aware of it. But in fact, the absence of a mention of that letter or the specific deadlines is actually evidence that Doe was ***not*** aware of it. Of note, November 1, 2017, the date referenced in the July 2017 notices, was the same date provided on Doe's countersigned Leave of Absence form, which listed contradicting requirements for returning from his leave of absence. Appx. A-36. And the Filipetto letter was dated two days prior to the date that he claims to have hand-delivered it, which helped prevent Doe from discovering that there was a separate letter that he should have received in his meeting with Filipetto. This evidence, when considered in conjunction with Defendants' departure from school policy and the timestamps showing that Filipetto was still tweaking the letter thirty minutes after he claimed to have delivered it, is more than enough to create a genuine issue of material fact.

**B.     The order should be altered because of previously unavailable evidence.**

14.     The Court's Order should be modified because of additional evidence that was withheld by Defendants and was only discovered after Doe filed his Response to Defendants' Motion for Summary Judgment. In discovery, Doe tendered the following his request:

> REQUEST FOR PRODUCTION NO. 16: Produce all documents and communications authored by Emily Mire regarding her research, publications, and opinions (whether personal, professional, or academic in nature) regarding mental health issues and disorders.

Doe later discovered that Defendants' had not produced an article entitled *Mental Health in Grad School*, which was published online by UNTHSC on February 18, 2019. Ex. A. This article actually quotes Emily Mire about her opinions on mental health issues and should have been produced in response to Request for Production number 16. *See* Ex. E at 7, No. 16. Mire's quoted professional opinions and actions directly contradict what Dr. Mire testified to in her deposition. *See* Dkt. 62 at 275–276, 316 (Mire Dep. 66:22–67:02, 107:10–24). The difference is key in understanding what UNTHSC typically does when it has not heard from a student to compare it with what Mire did when she did not hear from Doe. After they had not heard back from Doe after the July 2017 notices were sent to his school email address, nobody reached out to Doe or his faculty advisor until after the July 2017 SPC meeting was already complete. Dkt. 62 at 1083–1084 (Doe Dep. at 203–204); Dkt. 61 at 87 (Mire note at 7.25.17) The article emphasizes the difference in treatment that Doe received compared to other UNTHSC students, supporting that Mire treated him differently because she believed he was depressed and/or had bipolar disorder. This information, in addition to the deposition testimony and summary judgment evidence already in the record, creates a fact issue as to whether Doe was treated the same as other UNTHSC students on leave of absences based on a disability, as well whether Defendants intentionally deprived Doe of notice of the terms of his medical leave of absence in order to cause his dismissal. The final judgment should be vacated and summary judgment denied.

### III.   PRAYER FOR RELIEF

Plaintiff John Doe requests that the Court grant Plaintiff's Motion to Alter or Amend the Judgment, deny Defendants' Motion for Summary Judgment, and for such further relief, in law or in equity, to which he may be justly entitled.

Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas 77845-1515
Telephone:  (979) 694-7000
Facsimile:    (979) 694-8000

By: */s/ Gaines West*
   GAINES WEST
   State Bar No. 21197500
   Email:  gaines.west@westwebb.law
   JOHN "JAY" RUDINGER, JR.
   State Bar No. 24067852
   Email: jay.rudinger@westwebb.law

- AND -

**CARNEY LAW PLLC**

By: */s/ Kyle Carney*
   Kyle T. Carney
   State Bar No. 24096789
   9800 Hillwood Parkway, Ste. 140
   Fort Worth, Texas 76177
   Telephone: (817) 717-1195
   Fax: (817) 616-8751
   kyle@carney.law

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

   I hereby certify that on July 21, 2023, I conferred with Drew Harris, counsel of record for Defendants, regarding the relief sought in this motion. Defendants are opposed.

   */s/ Kyle Carney*
   Kyle Carney

## CERTIFICATE OF SERVICE

      I hereby certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Northern District of Texas on July 21, 2023, and therefore has been served upon all counsel of record in accordance with such e-filing protocols.

                                                  */s/ Kyle Carney*
                                                  Kyle Carney